J-A30023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WELLS FARGO BANK, N.A., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD JEREMIAH SCHINDLER, | |
| Appellant | No. 3728 EDA 2015 |

Appeal from the Order Entered November 18, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 13-31308

BEFORE:  BOWES, OLSON and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 22, 2017**

Appellant, Ronald Jeremiah Schindler, appeals from the order entered on November 18, 2015, following the trial court's order entering summary judgment in favor of Appellee, Wells Fargo Bank, N.A. (Wells Fargo) in a foreclosure action on a reverse mortgage.  Upon careful consideration, we affirm.

We briefly summarize the facts and procedural history of this case as follows.  On July 18, 2011, Appellant executed a reverse mortgage with Wells Fargo on his residence located in Elkins Park, Pennsylvania.  Appellant resided at the property until May 2013, when the residence sustained subterranean structural damage.  Appellant moved and notified Wells Fargo that he had vacated the property.

On October 18, 2013, Wells Fargo filed a complaint in mortgage foreclosure against Appellant. In its complaint, Wells Fargo averred that "[t]he mortgage [was] in default as a result of the mortgaged premises ceasing to be the principal residence of [Appellant] and the mortgaged premises [was] not the principal residence of at least one other borrower[.]" Complaint, 10/18/2013, at 5, ¶7. Wells Fargo claimed the total amount due on the reverse mortgage, through October 13, 2013, was $141,018.31. *Id.* at 6, ¶8.

On November 20, 2013, Appellant filed preliminary objections and a supporting memorandum of law in opposition to Wells Fargo's complaint. Wells Fargo responded on December 10, 2013, appending copies of the mortgage, promissory note, and sheriff's affidavit of service of the complaint. On February 19, 2014, Appellant filed another memorandum of law in support of his preliminary objections. The trial court entered an order overruling Appellant's preliminary objections on March 3, 2014. On March 21, 2014, Appellant filed an answer to the complaint with new matter. On April 29, 2014, Wells Fargo filed a reply to new matter.

Wells Fargo moved for summary judgment on September 2, 2014. After several stipulations for time extensions, Appellant filed his answer to Wells Fargo's motion for summary judgment on July 30, 2015.[1] On August

---

[1] In its opinion pursuant to Pa.R.A.P. 1925(a), the trial court states that it was unaware that Appellant filed a response to Wells Fargo's motion for
*(Footnote Continued Next Page)*

26, 2015, Wells Fargo filed a supplemental brief in support of its motion for summary judgment. On August 28, 2015, Wells Fargo praeciped the trial court to attach supplemental exhibits in support of its motion for summary judgment. In an order filed on November 18, 2015, the trial court granted Wells Fargo's motion for summary judgment and entered an *in rem* judgment in Wells Fargo's favor in the amount of $156,999.66 plus interest and costs from August 18, 2014. This timely appeal resulted.[2]

On appeal, Appellant raises the following issues for our review:

I.      Whether or not the trial court erred by granting [Wells Fargo's] motion for summary judgment when [] Wells Fargo [] failed to satisfy the prerequisite conditions prior to filing the mortgage foreclosure action?

II.     Whether or not the trial court erred by granting [Wells Fargo's] motion for summary judgment when [] Wells Fargo [] failed to obtain approval from the Secretary of Housing and Urban Development ("HUD")[?]

III.    Whether or not the trial court erred by granting [Wells Fargo's] motion for summary judgment when [] Wells Fargo [] failed to provide [] Appellant thirty (30)

---
*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

summary judgment. **See** Trial Court Opinion, 3/29/2016, at 4 n.2. The trial court determined, however, that Appellant "suffered no prejudice" because "subsequent review of the [a]nswer show[ed] that [Appellant] fail[ed] to present a question of fact." **Id.**

[2] Appellant filed a notice of appeal on December 14, 2015. On January 7, 2016, the trial court issued an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on January 26, 2016. On March 29, 2016, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

days['] notice prior to filing suit as required by the Secretary of [HUD?]

IV. Whether or not the trial court erred by granting [Wells Fargo's] motion for summary judgment when [] Wells Fargo [] failed to provide [] Appellant thirty (30) days['] notice prior to commencing any foreclosure to either correct the matter which resulted in the security instrument coming due and payable; or pay the balance in full; or sell the property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or provide the lender a deed *in lieu* of foreclosure[?]

V. Whether or not the trial court erred by granting [Wells Fargo's] motion for summary judgment when [] Wells Fargo [] failed to accept a deed *in lieu* of foreclosure in accordance with the provisions of the reverse mortgage and HUD regulations[?]

VI. Whether or not the trial court erred by granting [Wells Fargo's] motion for summary judgment when [] Wells Fargo [] failed to allow [] Appellant to sell the property for the lesser of the balance or 95% of the appraised value[?]

Appellant's Brief at 4-5 (complete capitalization omitted).

Initially we note that in its Rule 1925(a) opinion, the trial court adopted Wells Fargo's motion for summary judgment and supporting brief. *See* Trial Court Opinion, 3/29/2016, at 3. As a general rule, a trial court cannot rely on a party's brief *in lieu* of a Rule 1925(a) opinion to explain the bases for its rulings. This approach is inconsistent with the proper role and function of our trial courts in setting forth the bases of their rulings. *See Commonwealth v. Fulton*, 876 A.2d 342 (Pa. 2002) (reiterating need for articulation of independent judicial analysis, "in support of dispositive orders

- 4 -

so as to better focus appeals and better facilitate the appellate function");
***Commonwealth v. Williams***, 732 A.2d 1167 (Pa. 1999) (stating same). In many cases where the trial court has adopted a party's brief wholesale, the appellate court has remanded for a trial court opinion. Nevertheless, we do not need to remand for an independent Rule 1925(a) opinion in this case, because we do not believe that the trial court's actions have impaired our ability to conduct effective appellate review. Here, in addition to adopting Wells Fargo's position, and in accordance with Pa.R.A.P. 1925(a)(1), the trial court's opinion makes reference to the place in the record where the trial court's rationale may be found. Therefore, we decline to remand this case to the trial court. Rather, we admonish the trial court for adopting Wells Fargo's motion for summary judgment and supporting memorandum in its Rule 1925(a) opinion. ***See In re Approval of Special Counsel***, 866 A.2d 1157, 1163 (Pa. Cmwlth. 2004) ("we do not believe that the trial court's actions have impaired our ability to conduct an effective appellate review of this case. Therefore, we decline to remand this case to the trial court. Rather, […] we only admonish the trial court for copying the City Solicitor's brief and using it for the 1925(a) opinion.").

We now turn to the merits of Appellant's claims. As those issues all center on the contention that the trial court erred by determining Wells Fargo was entitled to summary judgment, we will examine Appellant's claims in a single discussion. Appellant avers that Wells Fargo failed to satisfy the

requisite conditions precedent under the terms of the reverse mortgage prior to filing the mortgage foreclosure action. More specifically, Appellant alleges Wells Fargo was required, but failed, to:

1. obtain[] approval from the Secretary of HUD to make this loan due and payable;

2. [] provide [] Appellant [] thirty (30) days notice[3] prior to commencing any foreclosure to either correct the matter which resulted in the [s]ecurity instrument coming due and payable; or pay the balance in full; or sell the property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or provide [Wells Fargo] with a deed *in lieu* of foreclosure; and

3. [] accept a deed *in lieu* of foreclosure in accordance with the [r]everse [m]ortgage and HUD regulations.

Appellant's Brief at 12.[4]

_____

3   Appellant claims that U.S. Postal Service records show that notice "was delivered to someone other than [] Appellant" and did not comply with HUD requirements. Appellant's Brief at 14-15. However, Appellant provided his new residential address to Wells Fargo on his non-occupancy notification form. **See** Wells Fargo Motion for Summary Judgment, 10/2/2014, Exhibit H. Postal documents show that the notice was sent to that address and service was accepted. **See** Wells Fargo Motion for Summary Judgment, 10/2/2014, Exhibit D. While Appellant now claims he did not receive notice, as explained below, soon after the notice was delivered Appellant presented Wells Fargo with a deed *in lieu* of foreclosure, one of the options available to Appellant under the notice. Because Appellant took action in conformity with the notice, we may imply that Appellant received it.

4   Appellant also cursorily argues that "although [he] filed a timely response to [Wells Fargo's] motion for summary judgment, the trial court failed to consider [] Appellant's] response when deciding the [] motion for summary judgment." Appellant's Brief at 7. However, Appellant did not set forth this claim in his statement of questions presented in his appellate brief and does
*(Footnote Continued Next Page)*

- 6 -

Our standard of review of an order granting summary judgment is clear:

> [we must] determine whether the trial court abused its discretion or committed an error of law. Our scope of review is plenary. In reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions.

*Wright v. Misty Mountain Farm, LLC*, 125 A.3d 814, 818 (Pa. Super. 2015) (internal citations omitted).

Moreover, we note:

> Reverse mortgages have been described as a financial planning device for [those] who are [] house rich, but cash poor. A reverse mortgage can address this dilemma by providing a means for converting home equity into cash. In a reverse mortgage, as in a conventional mortgage, the

*(Footnote Continued)* _____

not present any legal argument on this issue. *See* Pa.R.A.P. 2119(a) (mandating that an appellant develop an argument with citation to and analysis of relevant legal authority). Accordingly, because Appellant has failed to meaningfully develop this claim for our review, we deem it waived. *See Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011) (stating that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

mortgagee or lender advances money to the borrower or mortgagor. However, in a reverse mortgage the borrower is often times not obligated to repay any portion of the loan or the interest on the loan amount until the property is sold, the loan matures or the borrower dies or experiences an extended absence from the premises. The interest on the borrowed sums is added to the principal loan amount and the lender acquires a lien against the house in the amount of the initial principal and accumulated interest.

*In re Estate of Moore*, 871 A.2d 196, 201 n.3 (Pa. Super. 2005) (internal quotations and citations omitted).

A reverse mortgage is a contract. Since contract interpretation is a question of law, "our review of the trial court's decision is *de novo* and our scope is plenary." *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 96 (Pa. Super. 2015). We previously determined:

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The

meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Ramalingam v. Keller Williams Realty Group, Inc.*, 121 A.3d 1034, 1046 (Pa. Super. 2015) (citation and original emphasis omitted).

Here, the reverse mortgage contains a clause that states:

(b)  Due and [p]ayable with Secretary [a]pproval.  [Wells Fargo] may require immediate payment in full of all sums secured by this [reverse mortgage], upon approval of the Secretary [of HUD], if:

   (i)      The [p]roperty ceases to be the [p]rincipal residence of a [b]orrower for reasons other than death and the [p]roperty is not the [p]rincipal residence of at least one other [b]orrower[.]

Wells Fargo Motion for Summary Judgment, 10/2/2014, Exhibit A, at 4, ¶ 9(b).  Appellant admitted that he executed the mortgage and Wells Fargo was the only mortgagee.  Appellant's Answer and New Matter to Wells Fargo's Complaint, 3/21/2014, at 1, ¶¶ 4 and 5.  Appellant signed a form of non-occupancy which he sent to Wells Fargo, indicating he would not return to the property as it "appear[ed] to be uninhabitable[.]"  Wells Fargo Motion for Summary Judgment, 10/2/2014, Exhibit H.   Appellant does not dispute that he was the owner of the property, that he was the borrower who obtained the mortgage at issue, and/or that he no longer resided at the property starting in May 2013.  *See* Appellant's Brief at 8.

Turning to the sufficiency of the notice provided by Wells Fargo to Appellant, the record reveals no genuine issues of material fact that preclude

the entry of judgment in Wells Fargo's favor.  Regarding notice, the reverse mortgage states:

> (d)  Notice to Secretary [of HUD] and [Appellant].  [Wells Fargo] shall notify the Secretary and [Appellant] whenever the loan becomes due and payable under Paragraph 9[(b)].  [Wells Fargo] shall not have the right to commence foreclosure until [Appellant] has had thirty (30) days after notice to either:
>
> > (i)      [c]orrect the matter which resulted in the [reverse mortgage] coming due and payable;
> >
> > (ii)     pay the balance in full;
> >
> > (iii)    [s]ell the [p]roperty for the lesser of the balance or 95% of the appraised value and apply the net proceeds toward the balance; or
> >
> > (iv)     [p]rovide [Wells Fargo] with a deed in lieu of foreclosure.

Wells Fargo Motion for Summary Judgment, 10/2/2014, Exhibit A, at 4, ¶ 9(d).  Upon review of the record, Wells Fargo provided the requisite notice to Appellant by letter dated May 15, 2013, which specifically highlighted the above-mentioned courses of action.  *Id.* at Exhibit A.  Wells Fargo did not institute its foreclosure action until October 18, 2013, more than 30 days after providing notice on May 15, 2013.  Moreover, Deval, LLC (Deval) was Wells Fargo's loan servicing contractor through HUD.  *See id.* at Exhibit M.  Deval gave Wells Fargo approval for the reverse mortgage to become due and payable in a letter dated May 31, 2013.  *See id.* at Exhibit H.  There is

no dispute that Appellant never corrected the damage that led him to end his residency in the mortgage property or paid the mortgage balance in full.

With regard to selling the property for 95% of the appraised value of the property, by his own admission, Appellant did not present "[Wells Fargo] with an [a]greement of [s]ale in the amount of $9,500.00" until "May 20, **2015**."  Appellant's Answer to Wells Fargo's Motion for Summary Judgment, 7/30/2015, at 2 n.1.; ***see also*** Appellant's Brief at 19 ("On May 19, 2015, [] Appellant entered into an [a]greement of sale for said property.").  Notice of foreclosure was given to Appellant on May 15, 2013.  Pursuant to the plain language of the reverse mortgage, Wells Fargo could not institute foreclosure proceedings for 30 days after giving notice to allow Appellant to cure deficiencies.  Appellant did not present an agreement for sale until over two years later.  Upon review, Wells Fargo complied with the notice requirements under the reverse mortgage.

Moreover, while Appellant did provide a deed *in lieu* of foreclosure, Wells Fargo responded that:

> Per HUD guidelines, a[t] the time of conveyance to HUD a property must be undamaged by fire, earthquake, flood, hurricane, tornado, boiler explosions, or mortgagee neglect. The appraisal performed on [June 7, 2013] has revealed damage to the property.  The appraiser has noted that the inside and outside of the house has many cracks.  The damage is so extensive that 'it appears that the house is splitting in half.'  The environmental concerns, physical deficiencies, and adverse conditions affect the livability, soundness and/or structural integrity of the pro[pe]rty. Thus, the property does not meet the HUD conveyance

condition requirements for [d]eed *in* [*l*]*ieu* and the file will
be closed accordingly.

Wells Fargo's Motion for Summary Judgment, 10/2/2014, Exhibit K (internal

parenthetical omitted).[5]

Finally, upon review, we agree with the trial court that Appellant's

answer to the complaint did not contain specific denials.  "Averments in a

pleading to which a responsive pleading is required are admitted when not

denied specifically or by necessary implication. A general denial or a demand

for proof [] shall have the effect of an admission."  Pa.R.C.P. 1029(b).

Appellant fails to explain how or why the trial court erred in determining that

_____

[5]  Appellant raised, for the first time, in his answer in opposition to Wells
Fargo's motion for summary judgment that "[p]ursuant to 24 C.F.R.
§ 206.125(f) [Wells Fargo] was required to accept a deed *in lieu* of
foreclosure from [Appellant]."  Answer to Motion for Summary Judgment,
7/30/2015, at 4, 7-8; attached affidavit at 2.  This Court has previously
"conclude[d] that federal law does not mandate that a mortgagee comply
with [federal] regulations [] prior to foreclosing on an FHA–insured
mortgage."  **Fleet Real Estate Funding Corp. v. Smith**, 530 A.2d 919,
923 (Pa. Super. 1987).  However, we held that "a mortgagor of an FHA-
insured mortgage may raise as an equitable defense to foreclosure, the
mortgagee's deviation from compliance with the forbearance provisions of
the HUD Handbook and regulations."  **Id.** Our Rules of Civil Procedure
provide that all affirmative defenses shall be pled in a responsive pleading
under new matter.  Pa.R.Civ.P. 1030.  "A party waives all defenses and
objections which are not presented either by preliminary objection, answer
or reply[.]" Pa.R.Civ.P. 1032 (enumerated exception inapplicable).  Because
affirmative defenses must be presented in the pleadings, Appellant's reliance
on housing regulations in his answer to Wells Fargo's motion for summary
judgment failed to preserve the issue.  **See Joyce v. Mankham**, 465 A.2d
696, 697 (Pa. Super. 1983) ("Because affirmative defenses must be part of
the pleadings, Pa.R.Civ.P. 1030, appellant's subsequent averment of
estoppel and fraud in her answer to appellee's request for summary
judgment failed to preserve the issue.").

his general denials qualified as admissions or that he did not present valid defenses. As such, Appellant has waived any challenge to the entry of summary judgment based on his answer and new matter filed in response to Wells Fargo's complaint. ***See Commonwealth v. Woodard***, 129 A.3d 480, 509 (Pa. 2015) (an appellant waives an issue for failing to develop it in any meaningful way and does not refer to anything in the record to support his claim).

In sum, based upon our standard of review, we discern no abuse of discretion or error of law in granting Wells Fargo's motion for summary judgment. There were no genuine issues as to any material facts and it is clear that Wells Fargo was entitled to judgment as a matter of law. Appellant executed a reverse mortgage with Wells Fargo on the subject property. In May 2013, Appellant notified Wells Fargo that he had moved from the property, and had no plans to return, because of structural damage to the residence. Pursuant to the clear terms of the reverse mortgage, Wells Fargo was permitted to institute a mortgage foreclosure action upon this condition. Wells Fargo followed the proper approval notification requirements, as set forth in the reverse mortgage, prior to instituting the foreclosure action. Thus, Wells Fargo established a *prima facie* case to institute foreclosure. Thereafter, Appellant did not demonstrate facts to create a genuine issue for trial. Accordingly, the trial court properly determined there were no genuine issues and entered summary judgment in favor of Wells Fargo.

- 13 -

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/22/2017